Case number 22-5313, Adrian Da Costa et al. A balance versus Immigration Investor Program Office et al. Mr. Bless for the Da Costa et al. Mr. Banas for the Bagot et al. Mr. Goldsmith for the Appalachians. Okay, Mr. Bless, good morning. May it please the court, my name is Jesse Bless and I have the distinct honor of representing Adrian and Jade Da Costa in this matter. We'll be asking this court to reverse the decision of the district court and send it back for a decision on the pleadings. I mean, excuse me, the merits. This is about the pleading. The pleadings that are under a notice requirement. And our complaint set forth a plausible case for unreasonable delay under the administrative procedure. And in fact, these cases are usually guided by a set of factors under this court's decision and telecommunications track. The district court found that we had satisfied. 2 out of the relevant 5, we lost 3 to 2, I suppose, but the real error here was. That the resolution of facts, we decided against our case. I mean, against our side against that it was, it was resolved in favor of the moving party. And under Toby 6 standard, that's not appropriate. And in fact, what facts do you think were resolved by the district? Well, that they had been following a 1st in 1st out methodology under their purported pool. So they took judicial notice of that. Correct and the district court's entitled to take judicial notice. You know, I don't know if you can make judicial notice of that. You know, he cited to a website that they had where they report to present their pool of. Reason their feasibility approach, we put forth evidence that they didn't follow it. And it's a, it's a resolution back in that 1st factor whether they followed it or not, I think is a factual question, but it's not. Subject to question it's. I think that there's been a pretty long standing. Practice of relying on. Public facing agency websites. As being not subject to reasonable dispute. And why is that subject to reasonable dispute? If the agency is representing public on a public facing website, this is how we do it. Why can't that be taken into account? Sure. Let me break that down. And no one's they, I have and I. 1st, fact, fact is really 2 part. Is there a rule and is there a rule that is reasonable? And it's not reasonable if it's not being followed. No, I understand if it's not being followed. I think you would have a factual issue, but. That's a rule of reason itself, which is based on the industry practice as. Explicated on their website, why can't the court take judicial notice of that? So that's not fact finding. That's taking judicial notice. That's correct. And that's not what we're disputing. We're not disputing that that they purported to go forward with a visa availability approach. Our facts were that they weren't following it and had not followed it in this instance and your facts. So you're saying you've as a matter of pleading. You've not asserted that they use 1st and 1st out. As applied to available where there are available visas, you assert that they've. Done something other than that in practice and where specifically are the allegations that of that. Right so those allegations were. I have it, I don't know if you want. The sites. I'd like the pages. We have a repellent appendix. I have your appendix. Yeah. Yeah. And do you have and it has the complaint. And so I'm wondering which paragraphs of the complaint raise that. Right so if you go forward, so there was a 92. Paragraph 92, yes, which says plaintiffs invested at least. $500,000 me. It's a better job for you. 9697149. And 1 to 2, they've approved thousands of later filed. I fit by 26 is. Of other investors. And including other investors in the same commercial enterprise. I guess the question is, how does that. So, there may be later filed I, 52 petitions. As to which it's a, there are these availabilities that don't apply to your client. And that would legitimately, according to their statement of what their policy is, that would be. This isn't what their policy that would be inconsistent if they had been approving later file. Well, they can be later for they're doing the FIFO, but. But as conditioned by available visas, and so if there are people in a area more available, these are doing that. Over older where there may be fewer. Sure. But in this instance, our visas were available. They were always available and that's the distinction. So we, I'm sorry. Wouldn't you have to allege that other people from the same country. Who filed after your clients were getting approved before your client, but you didn't allege anything about what country these other visas that we're getting educated 1st. We're coming from, let, let me, let me just take a step back. So it's not just it's rest of the world. And then there are only a couple of backlog. People are calling China, India. So, if your rest of the world, South Africa's rest of the world, you're, you would, is that I'm sorry is. My understanding of what's on the website is that. They look at the country's availability and they. Take that into account 1st, where is it available? And then within each country, they do a method. It's really these availability by the visa boats and published by the Department of state each month. It's not by country. So it's not if you were subject to it. And the reason there's backlogs is because there's a per country cap. But South Africa would not fall in this entire proceeding at the time they file until today. Except for that brief period in the laps, there were visas available for Asian to cost. There was, they were never, I had understood it the way judge and describes it that that. Visas are made available by country. As you said, there's country caps. And so the cap is met for a period, then they would halt. And, and it makes sense to jump over those people if there are visas available and yet assigned. Yeah. No, it's not like Ireland, England. And so on and so forth, it's, is there a visa available? Are you the rest of the world? Or are you subject to some type of country cap? Or is there a backlog? It's not country by country. But it seems that all you alleged was there are people who filed after us. Who got their visas adjudicated and it seems like you would have to allege more. To create an issue as to whether the. Agency is following its method. We also were available and, in fact, on a pleading basis. Merely meeting factors 3 and 5 showing that the harms from the delay here and keep in mind, it just sticks whether your allegations were sufficient. It just seems to me that you just alleging that other people who filed after you. We're getting adjudicated 1st would not be sufficient. To create an issue as to whether the agency is following. Their rule of reason, which is this availability and then within that. You're you're saying they're not following. They're saying what their rule is and they're not following it. Right? But for you to sufficiently allege that they're not following it. It seems like you have to say more than people who filed after us are getting their visas. That's not enough. Because under this approach, there's, if it's not a strict approach. For those that were available and they're supposed to be processing that 1st in 1st out. We, but but among the available, though, they're different countries and there might not be availability based on what country you're from. Right? So, for those that are available, like, Mr. They were not following 1st interest. It seems that you would have to allege that there are people from the same country. Who are getting is that his position that there are people from South Africa. Who filed later who have gotten these? We sit in the same commercial enterprise because we don't understand the government's. Rule of reason to ever do it by based on nationality. I'm confused by that. So you say it's certain cap trees and then the rest of the world. I thought they were there only caps for certain places where this program is very popular. Or by by the nature of the immigrant visa allocation, you can only have 7% per country for all the visas. So, if you're subject to that cap, you're going to be placing it back. So there's backlogs. And family and employment case cases, so. For an Indian national for Chinese national, where they may. Becoming close to the country cap, the Department of state. And it's mystical powers come up with a monthly visa bulletin where they'll put an actual priority date, which is the day someone held a petition. And anyone who filed later does not have a visa available. Anyone who filed for would have a visa available. They would be all right. Council the website says it's by country. It says uses will now 1st process petitions for investors for whom a visa is either now or soon will be available. The form captures your country of birth, which will be compared with chart B. Indicating visa availability for that country. Right? I think what they mean though is sure, but they're not going to designate because there may be subject. There may be countries that become. Backlog correct. Right. But, but if they're not backlog, they'll be grouped together. That's not the website. Yeah. Well, I mean, I think we're, I think what we're talking about, though, is the difficulty here and accepting. You know, taking judicial notice and saying, because I suppose, or did not not say, well, you're from South Africa. So it doesn't matter. No, that that wasn't his analysis. He did say the analysis that you didn't sufficiently allege. That they're not following their rule as to you. Correct but he never he never understood this visibility approach and certainly the government has not. Reported this visibility this way that it's by some type of country and I think this I'm sorry. I thought that. The judge took judicial notice of the website and this is what the website says. By country, and so you're asserting that they're not following their purported rule of reason with respect to your client. But you haven't alleged that you're that they haven't done that sufficiently because the rule of reason that. Has been taken judicial notice of does this by country. And you have not alleged that people from the same country are being processed ahead of your. Client that is not even in their motion to dismiss. So, let me ask you is, is your theory that countries that are approaching the cap or that have. Reach the cap that they are to be set aside, but that with respect to, as you say, rest of the world. That that under the policy, as they've stated it, that needs to be. That needs to be chronologically 1st in 1st out, even if. In their experience, there are, you know. 6 applications a year from 1 country and 400 from another and they might want to. Yeah, you're saying they can't prioritize us between those. No, in fact, there's a, I mean, there's a, it's a decision. X, either I recited, there's a specific order of consideration under the statute 8, USC, 1153 E1. That talks about the specific order of consideration that that visas must be allocated and it's by priority date. And so it cannot be by nationality. In fact, there's a, there's also a discrimination provision in the allocation of immigrant visas in the. That would preclude the type of visa availability approach that currently is on their website. They can't even do that under the law. That would be illegal. And I don't think they do. What they do is they take people where visas are available. And there's no rhyme or reason to it. And then the amicus that was submitted. Before this court showed, they took 600 petitions that were filed after our plaintiffs and did it. And again, we're on the notice meeting here. This may be a marriage decision and in fact, if they had come back and said, listen. Look at all the people who filed you're well behind. That would be a question whether you've stated a claim. Yeah, that the agency has not applied its rule. To your client, right? That's awesome. But it seems to me that in order for you to state a claim based on what. Our understanding of the rule is based on the website, which was traditionally noticed. Is that it's they look at these availability for that country. And then uses will use this information along with other factors to determine which should be processed 1st. So, if you don't allege that there are other people in the same country. Process before you that is not on a FIFO basis. And you haven't stated a claim that the agency is not applying this. Program to your client. Well, I don't think satisfying the 1st track factor is necessary. To satisfy rule 8 of the federal system. That's not the essential elements. Well, I mean, you keep referring to notice pleading, which harks back to Conley Skipson, but, you know, we're in the Twombly all world. There has to be a plausibly pleaded. Absolutely basis, and it doesn't have to be, you know. Absolutely proof that would win a trial, but I think we're just trying to understand. Whether there is, you know, clearly the government will be. Will fill us in on what it's serious, but I had not. Understood your. Descript the description you're giving us today to be your understanding of the policy based on. Your papers well, I mean, it's not my understanding. It's really the immigration and nationality act requirement. There is no way and I don't understand their, their visa availability approach to. Designated by nationality and in fact, that would not be appropriate under the law. In this decision, and, you know, the, you can't do that. You have to take it by priority date unless you have no visas available because of the other competing provisions of law, which are the country cap. So, there's there is no, there is no way. In which you can start siloing people by country. If there are visas available, they would go by your view is that you must take by a priority date globally. Unless and until the. Country cap is reached, and then you put that aside and you continue to take people by. Filing date globally, and that was the purpose of the visa availability approach. I mean, let's not forget that they came up with that visa availability approach after our clients filed the petition because they wanted to reduce the processing time. And what they said was, it makes little sense for us to focus on cases and petitions where visas are not available because of the country backlog. So, we're going to focus on those where visas are current. And available make sense. Okay. No, it's disputed. In fact, however, though. Once you get into the queue where visas are available for the rest of the world, it must go by priority date. And that's not what happened. And that's what we elect. I mean, that's really just as a matter of sort of how the program works the period when you're. Petitions pending the investment is tied up in the project, but the period of time during which it's tied up in the project is not. Counted against the minimum period of investment required. To be eligible for the green card, right? So it's only the is it 6 years. That 1 has to you have to maintain the investment actually have to sustain your investment. Through the removal of your conditional residency for 2 years now. Um, so that means after this 526 petition would be approved, let's say. Then you have to file for an immigrant visa and then you have to come in on that visa and then within, I guess, 90 days. Prior to your anniversary, you have the petition to remove. The conditions, because you're a conditional resident, you have to sustain your investment. Another 2 years, so we're talking, so that's why the delays are so impactful. Am I misremembering that? There's some 6 year commitment. Misremember there's not a 6 year. Okay. You have to create 10 full time jobs. Right? Yeah. No, I mean, you have to sustain your investment and this is why. But only only 2 years after you get this is the practical difficulty, whether you're a backlog, or you're going on a border, let's say they started going last in 1st out. Your term of investment now has just been extended. Now, what is it? 60 months for a petition? It used to be 19 months when our, our clients filed. So that that is added that period of investment is added on. So, this is why the delays are harmful, but I do want to just make 1 point. I didn't get, you know, but factors 3 and 5 in this case, we're found for our clients. The delays here. Had impacted their health and welfare. So, track factors 3 and 5 in cases from courts have found that that standing alone. Was sufficient to get past the pleading states and that's what we ask. Give our clients a shot for the district court to go to summary judgment. All right, thank you. Mr. Bannis. Thank you. May it please the court. My name is Brad advance. I represent the Vegas in this case. I'm just, I want to try to answer your question when you reference the website. You also referenced chart B. It said that on their chart B is something the state department creates. So, to see the contents of chart B, you need to go to another website. You Google visa bulletin, it pops up real quickly. If you go to chart B on the bulletin, you go to the right category for the employment base that to employment based preference. You'll see the distinctions that my colleague was talking about. You'll see that the caps only apply to 2 countries currently. In the space, and that's that's the People's Republic of China and that's India. Those 2 countries do have their own separate columns in the visa bulletin, which are B and chart A. But I think there are also limits, like, you can only have, but so many percentage of the visas can be from each country. So there's going to be a cap within each country is. Not on chart B, you're right. They only identify the countries that have already hit the cap. Okay, and that have this waiting. So literally the term for the for in the column that would apply to both my clients as well as my colleagues clients. It's called the rest of the world. And again, if you go to the visa bulletin, see chart A, chart B, that's how it's done because they only identify. Priority dates, it would be current countries are backlogged the E. B. 5. That's historically been China and just in the last 6 months, India or so. And I think this whole discussion does get to the point that the lower court of this circuit. Is not applying rules, well, be 6 standards to unreasonable delay case to answer me the same question that I asked of the cost us counsel. Where in your complaint do you allege and I think you actually have something about. Local favoritism, like, where do you allege departing from the stated. Approach your 10 through 12. We have paragraph 51, they do not follow 1st and 1st out. Paragraphs 55. Through 59, these availability approach is not a complete approach because really we don't know how they assign these cases. Because agencies never had to prove it. Well, for example, 51, they don't adjudicate forms on a person for that basis. That's completely conclusory. The plausible allegations to support that. If we continue to read the app, the complaint, we learned that we allege that the agency. Expedited hundreds of people ahead of mine, because they were in a project that was favored. By the administration at that time and again, we provided 200 pages of emails and our motion to dismiss that the court absolutely refused to look at. Those are absolutely relevant and available to look at and are those just tell me which pages to look. Um, it's around 218 in the joint appendix, your honor to 18 to 1. 8. Yes, sir. And what you're going to see is that through a FOIA, because again, we can't get past the motion to dismiss to get a record of discovery here. I'm through a FOIA application that was returned after we filed this case. We see emails from the investor program office, identifying this project, this expedite, describing it as problematic and trying to find a solution. And, you know, it's all redacted, but they discuss litigation exposure. That is that is well beyond what we need to do at the rule 12, be 6 stage. Your honor, you said that we live in that world and unreasonable delay cases are not outside of that world. I'd point you to a case called Gonzalez and the 4th circuit and a case called Mario Garcia in the 6th circuit. Admittedly, they do involve different immigration benefits, but this is not an immigration case. This is an unreasonable delay case and unreasonable delay principles apply across the different immigration benefits. Those are the cases that remanded for discovery. Those are cases that said the government's motion to dismiss was improperly looked at. This is 12 be 6 and we don't know the facts. And the 6th circuits case, if you read it through, you're going to see it rejects every argument that the government makes here because they treat these cases identically around the country. They file the same motion dismissed and that was out of the eastern district of Kentucky as they do here in D. C. as they do in Los Angeles, your honor, because again, they use these. What seemed like natural ways to process applications, but they never have to prove it because once they lose a motion to dismiss your honor, they settled the cases. So, they did not ever forced to prove what their actual rule of reason is, whether they follow it, whether they provide favoritism to certain projects over others. And that's all we're asking for. Your honor. I readily admit we can get through discovery and we could lose, but we don't even get that opportunity at this point. Your honor, and the lower court is divided and I understand the lower court in this particular district because of the unique nature of District of Columbia is overrun with these cases, but granting motions to dismiss and doing violence to rule 12 be 6 principles that no one disputes is not the way to handle it. I would point in the 6th circuit and in the 4th circuit, they haven't all of a sudden been overrun by unreasonable delay cases in the immigration text simply because those courts have said motions to dismiss in this context are inappropriate. And so that reason, I think, I think you're doing exactly right. We go to the 4 parts of the complaint. We give every specifically a specific non-conclusive allegation, the presumption of truth. We assume it's accurate. And to the extent there's a dispute between something the government has a burden emotion to dismiss and our fact that fact of dispute precludes a finding precludes granting the motion to dismiss. Again, these are not disputed legal principles. We're talking about. This is equality. This court and the lower court apply rule 12 be 6 consistently never the brand cases, except unreasonable delay case in the immigration context. And I find it interesting that when you look at unreasonable delay cases out of the Columbia for, say, the Bureau of Indian appeals, there's 2 that the government always sites. 1's called mash and 1's called wake up. You know, those cases went to discover they didn't lose the motion to dismiss it. They lost its summary judgment. The agencies in those case had to prove. The fact and the motion to dismiss say, it's a very well, it's like, it depends on the complaint. That's a fact specific now on the blanket expedites to new commercial enterprises. You haven't alleged that has happened since your clients filed their petition. You say something that happened before under a prior administration. So, why is that enough? Your honor, it went through 2020. that's well after my client filed my client filed in November of 2019. the 2 that are still accurate and this, they didn't cancel until 2020. well, until cancel what they didn't cancel this expedite your honor. The new administration took over in 2022 and so so, yes, they suffered and it's 271 at least immigrants that were decided ahead of time in about 90 days. That was the average the government admits. That's if it really does take an adjudicator 8.6 hours, that's pushing people back by a year. Essentially and that's inappropriate here. Now, did you allege that timing overlap? Where in your complaint is that? Your honor, I would point you, it's in that paragraph 67 through 71 and then at the end paragraphs 145 through 156, your honor. And again, keep in mind when we, when we, when I allege this and file this complaint, your honor, we didn't have that for you yet and the government was claiming, no, we don't do blankets. We don't do things like expedites. This isn't something that we do. We would never do that. And the website that you see, your honor, we've all been taken down because those folks are not concerned about, but this gave not only that regional center a significant commercial advantage is what the adjudicators recognize the problem, but it also delayed my clients and delayed most folks after them. Um, and your honor, I just want to point out 1 last thing. I know my time is up, but. The traffic for folks on 1 most of the time, but 4 seems to be, let's put it, I just lost a motion to dismiss in Texas. Solely on the basis of for, and this board is uniquely. I'm suited to discuss it because around the country on the different circuits, they look to the DC for, you know, administrative law, which I think is appropriate. And they cite this case called the match the tribe and match the tribe. Generally, when the government says it stands to proposition that if you're going to get pushed to the front of a quote line, that mandate shouldn't lie or unreasonable. They shouldn't lie. You can lose exclusively on that. This really needs to take that on and discuss it and explain whether it applies in immigration context, simply because in that case. We were talking about a administrative process that can only be done consecutive. It was an undisputed fact that literally all of the agency's resources went to 1 application at a time. If they move that 2nd application, all of the resources would be on the 2nd application. And for that reason, there are only 10 applications and they move them. You could see, so what's your answer here to why it wouldn't be line jumping for the court to grant relief to your clients? Because your honor. There's no line the agency can grant hundreds of these a week. If not more than that, I thought the whole position was there is a line, but that they're taking people out of line. Your honor. We allege multiple times. There's no line. I think the line is a very powerful metaphor, but I thought that FIFO, the whole concept of. Filing date being the, the sequence in which. The agency is supposed to process these applications. That is a line. Your honor, I don't think that holds up. So, they're, they're claiming that, but not doing it or you're saying they're not even claiming that. They claim 1st in 1st out everything. Yeah. And so that is a line. Well, and you're saying, well, they're not doing that. So they should just throw it in the. In the gutter, I'm, I'm, you just only lost me. I'm very good at losing people. Let's describe the line. Okay. Let's talk about the line. The line is at least 26 adjudicators. Because, okay, so there are 26 lines. Okay. There's 26 lines or there's 1 line like you do when you're going to TSA, you're in 1 line and then you go to the. Next available. That's a great question. In fact, your honor, I would love to know how it actually works, but there's 2626 at least right? And some and again, this is all now guesswork because we don't know because the reason excuse me there. These availability, they don't talk about how they actually sign the case adjudication and we talk about things in the abstract. But some of them are deciding, especially prioritize that they've already made a decision on a regional center. That the, that could be 5 applicants associated that that could be 500. It's associated with that. Right I think so they've now just claimed that because they realize they didn't have authority for that to expedite regional centers. No, I'm not talking about expediting your honor that. Oh, okay. That's a that's a special line. I guess that's the. Okay. So, when you talk about decision on a regional center. How does that fit into the rule of reason that we look. 1st, and 1st out, I think that's a question for the government because I don't know the answer. My best. Yes, because again, we haven't gotten to discovery. We haven't. Got to test their factual vermin and. A regional center, no investment regional center regional center. Partners up with businesses. Okay. Actually, I stayed in a hotel that was built with money last night. So the Marriott right? Marriott is the new commercial enterprise and that's where the foreign nationals put their money. Now, that that has to associate with the regional center. An organization has been designated and certified by us to help promote these projects and grow them and have multimillion dollar investments rather than just. Smaller, so my understanding of these availability approach is. If, if, if we have already reviewed the fundamentals of that project. So, that regional center, and there's 45 applications because it was a $20M project. Then we're going to prioritize that because we've already done a lot of the heavy lifting. We've already looked and determined whether the job creation was there, whether the economic econometric analysis was appropriate. And now we're going to get your source of funds. And so that plays into this assignment versus. Assignment versus just passing them through. We don't know how that works. There's 26 adjudicators and by the way, it could be more. You're right. They have 30 some adjudicators just for broad. There's a process to apply for expediting. Are you saying this is separate and apart from the. That's exactly right. If you're an individual and you have humanitarian. Basis and you say, please, please, please. Sure. And that's available to all. So, the basis for the expediting process is an individual. Based on your hardships, that's right. The, the expert out here, a blanket expedite for a project. Is a separate thing and your position is that there's no part of the rule of reason that addresses. That's exactly right. And just to be very specific, what was expedited here was at that time called a form. I 924 and a form. I 924 was what a regional center. Files to get kind of preapproval. For 1 of their projects, the preapproval meeting. Yep. We agree with the job creation. We agree with. You know, the economic econometric analysis, and then then these regional centers to go out and sell these security and say, look. The government's already approved our exemplar and so come join us and you can imagine it's a very good marketing. Technique we've been preapproved show your money came legally and then. And then you'll get a decision. So, what was approved in the trial project was that. The form I 924, yet they decided to adjudicate exit in an expeditious way. 271 individual applications. Totally different. None of those individuals had to say, hey, you know, my mother's dying in the United States. I would like to come stay with her and then see her to the end of her life. I can I can only do that. And you're saying that they took them out of line. It wasn't. People based on their country, based on those emails around the government says their average time was 3.3 months while they were reporting on public website. 62 months runner and this is our problem with public websites and taking judicial notice. We've alleged disputes of fact, and the lower courts just ignore them and they say, well, it's on the website. So it's gospel. And I would suggest that through our complaint, because that's what we limited to that in the attachments that you'll see, we allege that those are all incorrect and provide substantial corroborating evidence for that. So, I guess then, just in terms of the way you plead this. I'm looking at parts of your complaint. It seems like you would have to plead. That they have blanket expedites, and there were ones that affected your clients, which we did. And when it looks to me, which you said, we plead they're illegal. We plead it's a product favoritism because there's no mechanism under the statute regulations of policies to agree to adjudicate an entire 271 people because half of those people haven't even been solicited or signed up yet when the expedite was granted. And you're looking now at the. 146, I guess that's what I'm looking at. That upon information and belief, accorded significant process in time benefits to certain projects, even though not authorized to be a regulation. And then see, for example, this project. Correct and again, I would urge you to look at the documents attached to my response to motion dismissed. Because again, if we went to discovery, these are the things I would get and I'd be able to show or at least a bill presented to the court. Hey, here's what's actually going on. Now, make a judgment on summary judgment, because the way we get rid of the flood of pieces on delays in the lower course. Is decisions on summary judgment so that we have something that as a matter of law, I can tell my client well. In this situation, we can't do that. Otherwise, if we keep this motion to dismiss rule, this low risk, high delay strategy from the government side. These cases are going to continue to come in there, continue to create significant splits and do violence to undisputed rule 12 principles. And for that reason, I would ask that you vacate the lower court and allow us to finish the case just to 1 point of information when you're talking about these. Blanket expedites is that the same as the exemplar approval that you allege or is that a different thing? Totally different your honor exemplar is something that's been. In the industry for the last 10 years, and even the new law that just got past March last year codified. And so exemplars are just a separate form that basically allow a regional center and the project. To get certainty and provide certainty to their potential investors. Because as you noted, these folks are investing a significant amount of money and creating a significant number of jobs. And when they come into this, they say, okay, I'm going to put up my. Now, it is $100,000. What's it going to look like? And you have to say, well, I think under the system, you would say, well, let's give it a year to get approved. Then you have 2 years in your additional status, and then we plan your conditional status. You can get your money back for that decision. So you're looking at probably tying up your money, say, 3 to 5 years. Right now, their money is tied up for 5 years. Before any of that even starts your honor and so now you have these new issues that are being caused by this delay of this whole concept that it's called redeployment. Where they have to keep their money at risk. So the finance years who accepted their money originally. You know, the project over the hotels built, so now they have to keep their money at risk and something else. So they take the money and they redeploy it. Into something else that the original investor never knew about or could know about because he's processing times. I've really done a number on the program approval is. Is a tool that potentially a regional center that is trying to administer blanket expedites might use. No, so so when you say blanket expedites to my knowledge, I think, yeah, my mother's only ever been 1 and you're looking at. I don't know that it's a rural set aside. Is there a different statute that applies to this particular blanket expedite? Because it's a rural. No statute regulation or policy tells you how to request a blanket expedite because it's. Something that says the law creates new visa categories, including rural subject to a different queue. So, if this expedite is subject to a different queue, then your client was not. No, the rural set asides were only enacted in March 15th of 2022 under the. You'd be fine reform and integrity, but I'm just going by what cited in your complaint and this website says it's a separate queue from what your clients are in. So, this wouldn't support. I'm sorry. I'm I just clicked on the link in your complaint. Oh, the fast. That calm and it says it's a different queue. So, your client's not affected by this. That's because the website link you clicked on has been changed because what you're looking at could not have been in place in 2019 when we file. And the blanket expedite, you're going to find it anywhere. So, I guess where I am is, I think. You could theoretically state a claim if you have actually alleged that there are blanket expedites that are hurting your clients, but I don't see it on the face of your complaints and what you've cited doesn't support it. So, I'm just now just trying to see if you've actually alleged facts that would support that theory, which I think is a valid theory, but I don't see the fact your honor. I would say again. We're dealing with the problem of delay the E. B. 5 fast website has been changed pictures. You see, came from a website that goes back in time on the Internet and get screenshots because they change it. So, what am I supposed to do here? This is what you've cited. I don't see when your complaint, the facts to support your theory. So, I guess you lose because, you know, you're the face of your complaint doesn't support it. Your honor, we don't have to win. No, you don't have to win, but it has to be plausible. You've stated a theory, you have to have some factual allegations to support it. Your honor, first of all, I would say that the court below didn't even look at all our factual. It ignored half of them. That's the 1st thing the 2nd thing is we have to give our factual allegations the benefit of the doubt. And even if they're doubtful, assume they're true. And so when we alleged they decided 271 people from 2017 to 2021, I'm just looking at your complaint and I don't see the facts. That's all I'm saying. I understand your honor and I do believe that the complaint speaks for itself. I do think that this court can review the documents attached to the motion dismissed because they're referenced by incorporated by reference in the complaint. And for that reason, we think that this court should force lower courts here to actually apply rule 1206. Thank you. I just have 1 more question health and welfare. You alleged that the delay affects health and welfare. It's clear that it affects the tying up of the economic resources, but isn't that economic harm? Not health and welfare. Your honor, I think that. Yes, time is economic, but I think that that track factor is kind of a duality. Does the benefit that's being delayed impact the person's health and welfare, or is it an economic regulation? I think it's very stark and I think here the significant imposition on their daily lives is what we elect. They're just being deprived of the ability to immigrate to the United States for years and year and imagine getting passing the bar. Right? And then the state saying, oh, here's your certificate to practice here in a 2nd and then waiting for years during that 4 years. Sure. You're going to get it eventually, but your life would be on hold and that's the hardship they're suffering and that goes to their health and welfare, not their ability to earn money as a lawyer. Right? And that metaphor. Yeah, although that theory seems very broad in the sense that it's difficult to wait for any important benefit. And so that track factor would basically. Virtually always be met and prolonged uncertainty about a significant. Benefit, I think your honor that it will go to the weight of that factor. I think it's is this economic or is this this is health and welfare, but given this particular context, this specific case, it doesn't weigh that heavily in their favor. I'll just point you again to the barrio's case, which my colleague cited where they say, yeah, alleging that you have legal disabilities under the law and that affects your health and welfare. That's sufficient that that alone. Sufficient to state a claim and that's applying rule 12 and 6 standard. It's all right. Thank you. Mr. Goldsmith. You want to make these work. It's a matter of law on scale to alleged became late. Investor visa petitions was so egregious as to warrant. And under it, there's a line that you have to know from your possibility. To possibility, right? You're exactly right about that. But Mr. Goldsmith, it would be really helpful if you would sketch out for us. Your understanding of what the government system is, what the rule of reason is, how the. Taps interact with the 1st and 1st out. Asserted rule that that the government. Yes, your honor, I will try to do so. Let me just say. These are issues that weren't exactly raised. Hello, and we're not really fleshed out in the week, but I will try to address your intention. I mean, your question about. How the caps work, so the availability of more broadly, if you could affirmatively explain, what is the rule of reason? What is the policy? That the agency follows with respect to this program. Right, so in around 2000, when they were dealing with the backlog. These these petitions, they sought to change. How they processing these petitions to consider and to not just consider, but to focus on the availability of. Because not all petitions have. He's a number available due to these statutory. Apps for country apps now, the, the, the. The allocation of numbers is handled exclusively. By the state department, so USC is directly involved. But they look to the state department to see. And try to prioritize those. Petitions where if approved the person. The priority is current, they could obtain a visa. So, whereas for 2000, they looked at. It was basically grounded in first in first out. They switched and have tried to take into account and. We're taking focus on this ability. And and to consider that in trying to deal with this. Did you say they switched to more than take into account? Visa availability, they're focused on before 2000. It was. Grounded 1st, 1st out, and then they moved to visa. I thought that was still I thought the department's position was that it was still. 1st in 1st out subject to visa. It combines both your honors. So, what about the way the appellants have described the program is wrong? They say. When a country has reached the cap, set that aside and don't insist on. Chronologically processing the applications from those countries, because. Even if the application is fully process, there's not going to be available visa. So set those aside and then. Do the rest of the world chronologically without regard to where. The applications are coming from. And then if another country reaches its cap, set it aside. That is how I take it. Their understanding is based on public descriptions. I, is that not your understanding what the reason is. I'm sorry, I don't have an answer to that question over that. But this was not the, this was not the issue was that was litigated. Other than to say, it described on their website. I took this to absolutely be the issue that was that was litigated. It was described as. 1st, and 1st out subject to visa availability. That's what I understood. Right? Yes. Plain to say that's what I understand district court to have accepted. That's what I. Thought you're I may have a different view from my colleagues about judicial notice, but. It's pleaded that that's what your policy is and you're saying no, actually. 1st, and 1st out doesn't isn't the. Primary guiding principle, it's now. These availability and can you can you describe what you mean when you say it was not very clear. I apologize to report. Um, but there was an allegation that it's done strictly for. It's not correct. Look at. So, can you give an example of putting aside India and China. Or any other country that has met it's. How in doing 1st and 1st out would. The staff take into account visa availability. That's the that's the question. I don't have an answer. That seems pretty important. You don't know actually what they're what the rule of reason is. Not beyond what they said on the website and your understanding what they said on the website is again. Yeah, they basically do things in. 1st, and 1st out with taking into account. The availability of these numbers. Now, there was this situation for approximately 9 months. Where they didn't have the authority to prove. Right? Patients in connection with regional center program. So, they didn't just sit on their hands. They judicate petitions. They were called stand loans that were not part of the regional center program. So, I guess you could have a situation where someone. Filed later, got to get it earlier because it was. Circumstance and there also are situations where. There's a procedure where you can request an expedite. But I think judge, those who hit the nail on the head where. You said that you can't now complain some. Other tissues benefited from this process. When the talents in this case never sought to use this. Procedure that there are facts to connect. No, the contention that there were erroneously approved. Expedite request, can I go back? I go back to what the website say about the rule of reason. Because it does, there is a website. That says there's an annual per country allocation of visas. This is I'm trying to tell you what I'm looking at. It's a website that says uses suggests process for managing visa petition inventory. And if you go to that website, it does say there's a per country allocation. I think what judge pillared is interested in and I am too. Is if you go to the page about visas, it says 2 countries. I've met their cap and the question is whether there's. Serve a country still a country by country app. Or is everybody else lumped together in a FIFO system? And this website suggests that there is still a per country allocation. Is that true? So that in order to allege that you're not following a rule of reason, somebody would have to allege that somebody from the same country. Has been processed before that, even though they filed after. That's kind of what I'm interested in. And again, I have to apologize, but I don't have any answer to that question. I don't think it was raised. There's this distinction between, yeah. And I apologize. I should have an answer. I would also like to point out that although there's no right line rule. District courts have in this district, in this circuit. That lays a 5, 6, 7 years for generally unreason. But here we have less than three years when the petitions were filed November 2019. When litigation commenced, and then for approximately nine of those months, USCIS congressional authorization to approve petitions. And they've- Can you address the blanket expedites? Yes. So that's not part of the rule of reason. So if there were blanket expedites, that would not be following your rule of reason, correct? So there's no, there's probably no such thing as a blanket expedite. It was a procedure for requesting expedites. They're raising allegations as to that they were improperly granting requests to expedite in 2017 in connection with an equestrian center or an international court show in 2018. That the effects of those continued on through 2018. And the question of whether or not they were properly granting these expedites, I think has nothing to do with whether or not they can, they're entitled to a judicial order. So your friend on either side, I thought, said that that expedite was in effect through 2022, or somehow it did affect his client's place in the queue. I don't think there are any factual allegations to connect those allegations to these particular petitions. And I don't believe for the reasons Judge Boasberg outlined, that the question of whether or not they were properly granting expedites, or whether some of the expedites should have been granted, but other later ones shouldn't have been granted, are a basis for awarding judicial relief to these, with respect to these- Would you agree there's sort of a legal theory issue, and then there's a factual allegations issue? If there were, I think it would be a sufficient legal theory to say that you're saying you have a rule of reason, it's FIFO subject to these availability, but the agency is actually doing something that's not subject to the rule of reason, which is taking a project and expediting all the EB-5 applications associated with that project. That would theoretically state a claim, but if there are no factual allegations to back it up, then that complaint would still be dismissed. Do you agree with that? So I agree that there's no factual allegations to back that up. I would ask the court to consider it. But what's your answer to whether that theory would be sufficient? Perhaps not, based on this court's precedent in Citizens for Responsibility and Ethics in Washington v. Trump, a decision from 2019. It was a mandamus case in which this court held that the district court may properly consider a memo on its website and a motion to dismiss stage, citing HIPAA, even though the very fact that there's a memo, there's a policy, doesn't guarantee that that policy is being followed. And the reason is that plaintiff must falsely allege that the government is defying the law. Isn't that in tension with your position that what is on the website is the rule of reason? You're trying to rely on what's on the website to say, it's the rule of reason, this is what we do. And now I'm saying, if you're not following that rule of reason, is that a basis to challenge you? And you're saying no, because we don't have to follow the policy. Of course, the government has to follow its own policies. If the government's not following its policies, that's a real problem. But what I'm saying is it doesn't follow logically that if they did something, they granted some expedites that they shouldn't have granted, that these above the 13,000 plus petitions pending, these four petitions then get ordered to adjudicate. If you granted policies, blanket expedites that are in conflict with your rule of reason, and it affected the petitioners by bumping them out of line, why wouldn't they have a cause of action? Because you're not following your rule of reason, so you can't rely on that rule of reason if you're not following it. Well, the fact that particular adjudicators may have made mistakes, granted a request for an expedite under the agency's policy, it should not have been. That by itself is not enough to- Is it not? They don't have access to information. I take it saying there is a FIFO policy subject to caps. One assumes that that's first in, first out. There may be various other carve-outs, lawful or not, that have caused some later filed applications to be decided earlier. But assume each of those is either legitimate or just a done deal, still credit our use of FIFO subject to caps. And I think they're saying, why should we credit that if we hear about a lot of later filers, who are getting approved, why should we assume your version of the facts? Which is that, well, that was a horse show, and well, that's an abandoned policy that was authorized then, but is no longer. Like, they've raised some questions about the adherence to the rule of reason that the government posits. I understand, but this point is said that the track factors are not clear. They are either the factors applied, the exercise, or the initial decision. And here, you know, Judge Postman said even if he were to conclude that the delay was unreasonable, the balance of the factors still kept in favor. That is assuming that everything behind closed doors is proceeding with regularity. And we have other precedent that says, hey, when people aren't being treated equally, or when there's reason to think that stated policy is not consistently being followed, that's a different story. And so, I think we're trying to understand whether the complaint has plausibly alleged a case that falls into that category. Well, I see my time is about to expire. If I could just make two points. Go ahead. Thank you. One, we've never, but they seem to contemplate some type of forensic style. We would go back and look at all conditions for X number of years. However many thousands to determine which ones, when they were granted, and whether or not the government approved, whether it was a good reason why they were approved or adjudicated at the time. And this court has never contemplated that type of relief. We're not writing a blank slate. There is, of course, cases in district court supporting the decision, the district, two district courts, you know, for those reasons, the district court decisions could be a thing. Thank you. Let me, do you have any questions? No, I don't think so. Do you have any questions? We have your argument, because you were out of time from the. And does anybody have questions of Mr. Vance? I'd be happy to hear a 1 minute rebuttal. If you're, if you're. Council. I'll be at 59 seconds. So, if you look at pages, the 12 of the government's brief, they described these availability approaches. And it's not by country. And our, so our Mr. always had a visa available. And so if they want to tell us that we're going to be jumping the line. But if they're jumping the line, it's okay. That's a plausible case. That is, if they want to eat the line and saying that if you grant relief, your honor, that you're going to be jumping the line, but they've already jumped it. And then I'm following a little reason. That's a plausible case for unreasonable play under the administrative procedure. That's what we want. That's what we just want to do. Thank you. Did you want to hear from Mr. Ben? Okay. 1 minute. Thank you. If, indeed, the government's accurate, this is a line. Then any blanket expedite that's unlawful pushes my clients back by definition. Because it's a line. They're getting in front of the grocery store. You just have to allege that there is a blanket expedite. Well, remember, blanket expedite is a one-time thing done in 2017 that extended all the way through 2021. Why do you think it extended? Why do you think it extended to 2021? They said it was over. The government's emails indicate that they stopped expediting these in 2021. They sent out letters to investors who expected the expedite and said, oh, we're not doing that. And again, then you see, and then they want to do an investigation. It stopped until the new administration came in, did an investigation, and wrote a lot of memos to try to protect themselves. And for that reason, there is no rhyme or reason to this process.  Thank you, honors.
judges: Henderson, Pillard, Pan